# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

| | | |
|---|---|---|
| **RECCIE GRAINGER** | ) | **PLAINTIFF** |
| | ) | |
| vs. | ) | No. 3:09-CV-00271-CWR-FKB |
| | ) | |
| **MERITAN, INC.; GENERUS STEPPING** | ) | |
| **STONES, INC., f/k/a GENERUS INC.** | ) | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER

Pending before the court are Defendants, Meritan, Inc. ("Meritan") and Generus Stepping Stones, Inc's. ("Generus"), motion for summary judgment and rebuttal, their memorandum in support of the motion, and response by Reccie Grainger. The Court, after reviewing the motion, briefs of the parties, and the relevant law, is of the opinion that the motion must be GRANTED.[1]

## I.  BACKGROUND

On February 18, 2009, Plaintiff, Reccie R. Grainger ("Grainger"), filed the instant action against Defendants asserting causes of action for sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., pregnancy discrimination pursuant to the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k), and various state law claims including intentional infliction of emotional distress, constructive discharge, and punitive damages. *See* Complaint [Docket No. 1-2] at 3-7. The case was originally filed in Hinds County Circuit Court, but the defendants removed the matter to this Court. [ Docket No. 1].

The alleged facts giving rise to Grainger's claims are as follows: Shortly after Grainger was employed by Generus Stepping Stones, Inc., Mildred Williams, Generus' Vice President, noticed that Grainger was pregnant and asked on multiple occasions why she failed to advise

---

[1] There is a dispute between the parties as to which defendant actually was plaintiff's employer. Because the Court dismisses this action as being barred by the doctrine of judicial estoppel, the Court finds there is no need to resolve that dispute.

management of her condition before she was hired.² Williams then misinformed Grainger of the company leave policy and advised Grainger that she needed to seek other employment. *See* Exh. 8 to *Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment* [Docket No. 70-8] at 9-10. Grainger then reported to Renee Walker, director of human resources, that she was being harassed because of her pregnancy. [Docket No. 70-8], at 12-16. The next day, on January 17, 2008, Auranuth Dant, a program director, and Williams reprimanded Grainger for work performance. *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment* [Docket No. 71] at 2. Grainger informed Williams and Dant that they were retaliating against her because she had called Human Resources. *Id.* In fact, the events on that day were so traumatic Grainger contends that it caused her to go into premature labor. Following the birth of Grainger's baby, Williams and Dant visited Grainger at her home to retrieve the company computer and informed her that she could return to work with a clean slate; "'forget about all of the other staff [sic] to start over fresh.'" Exh. I to *Defendants' Motion for Summary Judgment* [Docket 67-9] at ¶ 8. Grainger returned to work on March 24, 2008 but felt compelled to leave work early when, during an employee meeting, her name was used in association with several negative work examples. *See* Exh. D to *Defendants' Motion for Summary Judgment* [Docket No. 67- 4] at 40-42. Grainger never returned to work. At some point during her final day on the job, a negative evaluation for Grainger was prepared. Grainger, however, learned of the evaluation for the first time during the discovery phase of the instant action. *Plaintiff's Memorandum* [Docket No. 71] at 3.

---

²In recounting the factual background, the court summarizes the evidence in the light most favorable to Grainger as the summary judgment nonmovant and draws all reasonable inferences in her favor. See *infra* at 3-6.

On May 22, 2008, Grainger filed a Charge of Discrimination with the EEOC based upon her sex. More specifically, she claimed:

> I was subjected to harassment because of my pregnancy in that I was told that I needed to seek other employment, questioned about my performance, told that after the baby was born and became sick I needed to be off that would be a problem, and treated adversely; whereas, the other employees were not treated in this manner.
>
> As a result of the above treatment, I was forced to resign my employment on March 24, 2008. In addition, all during the time leading up to my pregnancy, I was constantly told that I needed to seek other employment.
>
> I believe that I have been discriminated against because of my sex, female (pregnancy) in violation of Title VII of the Civil Rights Act of 1964, as amended.

Complaint [Docket No. 1-2] at 10.

The EEOC issued the Notice of Right to Sue (Issued on Request) on November 26, 2008. Grainger then proceeded timely with the filing of the instant lawsuit.

It is undisputed that Plaintiff filed a bankruptcy petition under Chapter 7 in February 2008, and that her bankruptcy case was pending at the time she filed her EEOC charge. It is also undisputed that Grainger never disclosed the claims herein to the bankruptcy court.[3]

## II. LEGAL STANDARDS

Though motions for summary judgment are filed frequently, not every case is suitable for such disposition. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[3]Because the Court is dismissing this action on the basis of judicial estoppel, it need not address the substantive issues. The Court, however, will note that motions such as these should be presented to the Court at the first opportunity and hopefully before the parties engage in costly discovery. See Fed.R.Civ.P. 12. The facts on which this motion is based appear to have been available to the defendants early in the litigation. The clients have incurred considerable expenses, which may have been avoided had this motion been filed sooner.

matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005). When confronted with these motions, this Court focuses on "genuine" issues of "material" facts. An issue is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with an inference in such party's favor that the evidence allows would be sufficient to support a verdict in favor of the party." *Zisman v. Mason*, 2008 WL 879726, at *3 (S.D. Miss. 2008) (citing *Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A fact is material if it is one which might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Factual disputes that are irrelevant or unnecessary will not be considered. *Id.*

When filing a motion for summary judgment, "the moving party is not required to negate the elements of the nonmoving party's case." *Lawrence v. University of Texas Medical Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999). Moreover, the movant "need not prove a negative when it moves for summary judgment on an issue that the [respondent] must prove at trial. It need only point to an absence of proof on [the non-movant's] part." *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

Once the movant shows the court that it is entitled to judgment as a matter of law, the burden shifts to the resisting party to show why summary judgment is not proper. *Id.* As explained further by the Court in *Walker v. J.E. Merit Constructors, Inc.*:

> The non-movant is then obligated to present competent evidence setting forth **specific** facts to illustrate the existence of a genuine issue of material fact for trial. . . .The resisting party may not create a genuine dispute simply by alleging that a dispute exists . . . 'When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by

>affidavits or as otherwise provided in this rule, must set forth **specific** facts showing that there is a genuine issue is for trial. . . .'

707 F.Supp. 254, 257 (S.D. Miss 1988)(citation omitted)(emphasis added).

Pointing to and setting forth these specific facts is the responsibility of the non-movant, and the court has no duty whatsoever to sift through the record in search of evidence to support a party's opposition to summary judgment. *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006). *See also, Fuentes v. Postmaster Gen. of U.S. Postal Service*, 282 F.App'x 296, 300 (5th Cir. 2008), *citing Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (not only must the non-movant point to specific facts, she must articulate the precise manner in which that evidence support her claim). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Davis v. Louisville Municipal School District*, 2010 WL 290956, *2 (N.D. Miss. 2010)(quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

Additionally, "the court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Zisman,* 2008 WL 879726, at *3, *citing Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994). Where there is no proof of contradictory facts, the court will not assume that nonmoving party could or would prove the necessary facts. *Id.*, *citing Wallace v. Texas Tech. University*, 80 F.3d 1042, 1048 (5th Cir. 1996).

This Court is ever mindful that although a useful device, summary judgment "must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d

1235, 1241 (5th Cir. 1989); *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). The jury has the responsibility to assess the probative value of the evidence. As a consequence, a court must step back and not make any credibility determinations, and it must not weigh evidence or draw from the facts legitimate inferences for the movant. *Strong v. The Dept. of Army*, 414 F.Supp.2d 625, 628 (S.D. Miss. 2005).

### III.  ANALYSIS

**Judicial Estoppel**

Defendants move for summary judgment arguing, *inter alia*, that Grainger's claims of sex and pregnancy discrimination and intentional infliction of emotional distress are barred by the doctrine of judicial estoppel.

Judicial estoppel is an equitable doctrine that "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Hopkins v. Cornerstone America*, 545 F.3d 338, 347 (5th Cir. 2008) (internal citations omitted). The purpose of the doctrine is to protect the integrity of the judicial process by reducing the risk of inconsistent court rulings and "preventing parties from playing fast and loose with the Courts to suit the experiences of self-interest." *Love v. Tyson Foods, Inc.*, 2010 WL 114243, *1 (S.D. Miss. 2010)(citations omitted). The Fifth Circuit has determined courts should apply judicial estoppel in those cases where a party fails to disclose an asset to a bankruptcy case, but then, as in this case, that party pursues a claim in a separate tribunal based on that undisclosed asset. *Id.* at 2. *See also, Reed v. City of Arlington*, 620 F.3d 477 (5th Cir. 2010)("judicial estoppel remains applicable to litigation claims that are undisclosed in bankruptcy."). Before invoking the doctrine three requirements must be met: (1) the party's position must be clearly inconsistent with its previous one; (2) the party's previous court must

have accepted the party's earlier position; and (3) the non-disclosure must not have been inadvertent." *Kane v. National Union Fire Ins. Co.*, 535 F.3d 380, 386 (5th Cir. 2008).  In the context of judicial estoppel, inadvertence requires that the debtor lacks knowledge of the undisclosed claim or has no motive for concealing the claim.  *Id*.  Because judicial estoppel is designed to protect the judicial system, not the litigant, detrimental reliance by the party opponent is not required**.**

Here, Defendants argue they meet each of the requirements necessary for judicial estoppel to apply.  First, Defendants contend that Grainger's position is inconsistent with her prior position and cite Grainger's bankruptcy petition as evidence she failed to list her contingent, unliquidated, or current claims against Defendants.  *See* Exh. O to *Defendants' Motion for Summary Judgment* [Docket No. 67-15].  Second, Defendants argue that Grainger convinced a court to accept the earlier inconsistent position and direct the Court to the bankruptcy court's discharge order that was based on Plaintiff's misrepresentations.  *Id*. at Exh. Q [Docket No. 67-17].  Finally, Defendants argue that Grainger's failure to disclose was not inadvertent because she had both knowledge of the facts underlying her claims at the time she filed the bankruptcy petition and a motive to conceal her claims.

The Court finds that each requirement is met in the instant case.  Plaintiff filed a bankruptcy petition under Chapter 7 on February 29, 2008, however she failed to provide the bankruptcy court with her contingent claims against Defendants.  *Id*. at Exh. O [Docket No. 67-15].  Grainger does not dispute, and there is no question that Grainger was aware of all the claims she now asserts before she initiated her bankruptcy.  Starting with Grainger's pregnancy and sex discrimination claims, in her declaration in support of her response to the motion for summary judgment, *see*, Exh. G to *Plaintiff's Response in Opposition to Defendants' Motion for*

7

*Summary Judgment*, [Docket No. 70-7] at ¶ 8, Grainger avers that on January 15, 2008, Dant, in connection with their conversations concerning her pregnancy, told Grainger that she should seek other employment. After Dant gave her that advice, Grainger "called HR on January 16, 2008 and spoke with Renee Walker and told her that [she] was being harassed because of [her] pregnancy . . ." *Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment* [Docket No. 71] at 2. Also, in her separate statement provided to the EEOC in support of her charge, Grainger explained that she told Walker that she was familiar with the FMLA-the Family Medical Leave Act. *See* Exh. I to *Defendants' Motion for Summary Judgment*, [Docket 67-9] at ¶ 3. Later that same day, Grainger also discussed the matter with a co-worker explaining to the co-worker that she felt that she was being terminated when Dant advised herthat she needed to seek other employment. Her co-worker then told her, "that's discrimination." *Id.* Thus, Grainger's own statements leave no doubt that she was aware of the underlying facts giving rise to her discrimination claims at the time she filed her bankruptcy petition. Furthermore, Grainger's bankruptcy discharge order issued June 24, 2008, well after her employment with Defendants, and at no point did she amend her schedules to provide notice to her creditors as the law requires. *Kamont v. West*, 258 F.Supp.2d 495, 498 (S.D. Miss.) *aff'd.*, 85 Fed.Appx 1, 2003 WL 22477703 (5th Cir. 2003). *See also, Kaufman v. Robinson Property Group, L.P.*, 661 F.Supp.2d 622, 626 (N.D. Miss. 2009)(debtor has affirmative duty to disclose all assets, including contingent and unliquidated claims and that duty is continuous); *Love*, 2010 WL 114243, at *2, *citing Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)(duty to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one). Similarly, with regard to her intentional infliction of emotional distress claim, Grainger also fails to point to any evidence or argue that this claim is based on underlying facts not

established prior to her bankruptcy filing.[4] It is her burden to point to specific facts to demonstrate why summary judgment should not be granted. *See, Ragas*, 136 F.3d at 458.

When a bankruptcy case is commenced "virtually all of the debtor's assets, including causes of action belonging to the debtor . . . vest in the bankruptcy estate upon the filing of a bankruptcy petition." *Kane v. National Union Fir Ins. Co.*, 535 F.3d 380, 385 (5th Cir.2008), *citing* 11 U.S.C. § 541(a)(1); *State Farm Life Ins. Co. v. Swift*, 129 F.3d 792, 795 (5th Cir. 1997); and *Collier on Bankruptcy*, § 541.08. Once the bankruptcy petition is filed, the trustee becomes the real party in interest and is the only party with standing to prosecute causes of action to the estate. *See Kane*, 535 F.3d at 585, *citing* 11 U.S.C. §§ 323, 541(a)(1); and *Weiberg v. GTE Sw. Inc.*, 272 F.3d 302, 308 (5th Cir. 2001). Debtors are required to disclose all potential claims and causes of actions in a bankruptcy petition. *Kamont v. West*, 83 Fed.Appx. 1, *3, 2003 WL 2247703, *3 (5th Cir. 2003). And, despite having "certif[ied] under penalty of perjury that the information provided" in her bankruptcy petition was true and correct, Grainger did not disclose any of her potential claims against her employer. Exh. M to *Defendants' Motion for Summary Judgment* [Docket No. 67-13]. Her assertion to the bankruptcy court that the asset did not exist is now inconsistent with her current position in this discrimination lawsuit. See *Bridgewater v.*

---

[4]The evidence and Grainger's response in opposition do not point to anything which establishes a claim for constructive discharge. The only evidence she relies upon is that during an employee staff meeting attended by Williams, Dant, Grainger, and several of her co-employees, Williams simply said, "'if anyone had any animosity against anyone there to go to that person. You shouldn't tell anyone else.'" Exh. I to *Defendants' Motion for Summary Judgment* [Docket No. 67-9], ¶ 12. Williams used "Reccie as an example." *Id*. Grainger decided at that moment to quit. *Id*. Grainger contends that using her as an example caused her to leave. Those statements in this context, however, do not reach the very high bar of establishing a claim for constructive discharge. *Tillman v. Southern Wood Preserving of Hattiesburg, Inc.*, 2008 WL 5246076 (S.D. Miss. 2008), *citing Jackson v. Univ. of Tex. M.D. Anderson Career Ctr.*, 54 F.App'x 404, 2002 WL 31687694, at *4 (5th Cir. 2002)(*citing Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)).

*Northrop Grumman Ship Systems, Inc*., 2007 WL 4224212) at *6 (S.D. Miss. 2007).  The first requirement, therefore, is met.

The parties do not dispute that the bankruptcy court accepted Grainger's prior position as it granted the requested relief of a discharge based upon her submissions to that court.  "By ordering a 'no asset' discharge to Plaintiff, at least in part based on the Plaintiff's bankruptcy schedules, the second [requirement] is met."  *Bridgewater*, at *7, *citing In re Superior Crewboats*, Inc., 374 F.3d 330, 335 (5th Cir. 2004).

Having found the first two requirements are met, the Court now turns to the third requirement, and finds that Grainger has failed to demonstrate that her failure to disclose the claims against Defendants was inadvertent.   In this context, a lack of awareness of the statutory disclosure duty is "inadvertent" only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment. *Kamont* at *2.  First, Grainger does not even dispute Defendants' assertion that most of the underlying facts giving rise to all of her claims occurred prior to February 29, 2008, the date she filed her bankruptcy petition.  As noted above, moreover, there is no doubt the acts underlying her claims definitely occurred *before* June 24, 2008, the day on which the Bankruptcy Court granted the relief she requested.[5]   Instead, Grainger simply implies that her non disclosure was the result of incompetent representation.[6]

---

[5]The Court rejects Grainger's argument that judicial estoppel should not apply because she "had not yet filed an EEOC Charge or a lawsuit at the time of [the] filing [of her bankruptcy]."  Plaintiff's Memorandum [Docket 71] at 16.   The duty to disclose, however, hinges on her knowledge of the underlying facts which she knew even before she filed her EEOC Charge.  *Bridgewater*, 2007 WL 4224212, at *8.  Moreover, she had a continuous duty to disclose, and she certainly could have sought to amend her petition before her bankruptcy was discharged.

[6]In particular Grainger argues in her brief that she "employed counsel who she expected to provide competent representation in her bankruptcy filing [, and she] provided all information to the attorney," Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, [Docket No. 71] at 16-17.

Blaming her previous counsel, without any evidence that said counsel neglected his duties, however, does not overcome the fact that Grainger had knowledge of the facts giving rise to her claims. At best, her previous attorney *may not* have informed her of her statutory duty to disclose the claim, but a lack of awareness of the statutory duty "is simply not relevant to the question of judicial estoppel." *Kamont*, at *3, *citing In re Coastal Plains, Inc*., 179 F.3d 197, 212 (5th Cir. 1999). Grainger "must show that she was unaware of the facts giving rise to her claim, *not of her duty to report her claim*." *Id*. (Emphasis added).

Second, Grainger does not specifically address Defendants' assertions that she would retain any recovery in this lawsuit without having to distribute the proceeds to her creditors; therefore she possessed a motive to conceal. The "no asset' discharge granted by the Bankruptcy Court relieved Grainger from the requirement of having to pay certain debts. Therefore, the motive to conceal, in this context is inferred. See *In re Crewboats*, 374 F.3d at 336; *Bridgewater*, *supra*, at *8. Accordingly, Grainger has not demonstrated that her failure to include the claim was inadvertent.

## IV.  CONCLUSION

The Court finds that there are no genuine issues of material fact in this case. Grainger is judicially estopped from pursuing her claims against these defendants. Defendants' Motion for Summary Judgment [Docket No. 67] filed December 13, 2010 is hereby **GRANTED**.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this the 2nd day of March, 2011.

                                             s/Carlton W. Reeves
                                             UNITED STATES DISTRICT JUDGE